UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN DOE, A FORMER STUDENT AT LINDENWOOD UNIVERSITY, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 3:15-cv-1188 |
| vs. ) ) | |
| LINDENWOOD UNIVERSITY, ) ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

## COMPLAINT

Plaintiff John Doe ("Doe")[1] brings this case against Defendant Lindenwood University ("Lindenwood") for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et. seq.* ("Title IX"), and for breach of contract, violation of the covenant of good faith and fair dealing, defamation and intentional infliction of emotional distress.  For his Complaint, Doe states and alleges the following:

## SUMMARY OF THE CASE

1. Doe is a 22-year old former student at Lindenwood who was dismissed (expelled) from the school by the Dean of Students, Angela Wingo-Rust, on October 16, 2015.

2. Lindenwood has approximately 2300 students.  The school displays its mission statement on its website, where it states the school is "firmly rooted in Judeo-Christian values," which include "the worth and integrity of the individual" and "the primacy of truth."

3. At the time of his dismissal, Doe had just completed a 4.0 academic year at Lindenwood.  He had no prior disciplinary record at the school.

---

[1] Plaintiff is proceeding in this case under a pseudonym to protect his privacy and reputation.  Plaintiff seeks consent of the Court and stipulation of Defendant's counsel to proceed in this manner.

1

4.      Although Lindenwood's published policies require a hearing (among many other procedures) before such a dismissal, Doe received no opportunity for a hearing. In fact, Lindenwood followed none of the procedures required to ensure a fair and equitable disciplinary process.

5.      The meeting on October 16, 2015, was Doe's first ever meeting with the Dean, who summoned Doe urgently to her office with no explanation. The Dean met Doe there with two security guards and the school Housing Director. After identifying herself, the Dean threatened Doe with criminal prosecution if he did not sign a form voluntarily "withdrawing" from all classes at the school. She then gave him two hours to gather up his things, ushered him out the door in the company of the security guards and threatened to prosecute Doe for trespassing if he ever returned to campus.

6.      Lindenwood accepts federal funds and thus is obligated to comply with Title IX. The school adopted a twenty-six page "Title IX Sexual Harassment Policy" that is posted on the school's website. The Dean of Students handed Doe a highlighted copy of the first page of this policy in the meeting when she dismissed Doe from the school – with the highlighting emphasizing the part of the policy that allows for dismissal as a remedy for sexual harassment. She did not give Doe the remaining 25 pages of the policy, nor did she comply with any portion of the policy in conducting her disciplinary process.

## THE PARTIES

7.      Doe is an individual and citizen of Minnesota.

8.      Lindenwood is a Missouri non-profit corporation based in St. Charles, Missouri. In 2001, Lindenwood took over the former Belleville West High School campus to open the

college's Belleville campus. The events described in this Complaint occurred on Lindenwood's Belleville campus.

## JURISDICTION AND VENUE

9. This is an action to enforce Title IX, and thus the Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

10. This Court also has diversity jurisdiction under 28 U.S.C. §1332 because Lindenwood is a Missouri non-profit corporation with its principal place of business in Missouri, and Doe resides in the state of Minnesota. Further, the amount in controversy exceeds the sum or value of $75,000.

11. The Court has jurisdiction over the pendent state law claims under 28 U.S.C. §1367.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2), as this is a district where the Defendant resides and where the events giving rise to the claim occurred.

## FACTUAL BACKGROUND

13. Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 28 U.S.C. § 1681(a). Lindenwood accepts federal funding and consequently is required to comply with Title IX.

14. There are many aspects to enforcing Title IX, but the relevant aspect in this case is ensuring fair, equitable and thorough consideration of claims of sexual harassment on campus, including claims of sexual assault. A school's failure to properly respond to claims of sexual

harassment can violate Title IX. At the same time, a school may not arbitrarily or capriciously dismiss or otherwise discipline a student.

15. The United States Department of Education Office of Civil Rights enforces Title IX, and it has promulgated rules that schools like Lindenwood must follow. These implementing rules are found at 34 C.F.R pt.106. Part 106.8 of the rules requires schools to "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." In requiring the adoption of "equitable" procedures for resolution of complaints, the Title IX implementing rules require schools to act equitably in resolving sexual harassment complaints. Further, in requiring the adoption of such procedures, the Title IX implementing rules require schools to follow their published procedures.

16. The Office of Civil Rights also issued guidance for schools on how to comply with Title IX and the implementing regulations in a "Dear Colleague" letter dated April 4, 2011. This guidance states that: "If a student files a complaint with the school, regardless of where the conduct occurred, the school must process the complaint in accordance with its established procedures." *Id.* at 4.

17. Additionally, the guidance identifies certain elements of a sexual harassment complaint investigation that are "critical" to achieve compliance with Title IX. One such critical element is the "[a]dequate, reliable and impartial investigation of complaints, including the opportunity for both parties to present witnesses and other evidence." *Id.* at 9. Further, schools must decide how to respond to such complaints based on a "preponderance of the evidence" standard. *Id.* at 11. Also, "[t]he complainant and the alleged perpetrator must be afforded similar and timely access to any information that will be used at the hearing." *Id.*

18. Title IX, the implementing rules and the guidance unquestionably contemplate that a school will conduct a hearing before imposing discipline based on an allegation of sexual harassment.

19. Lindenwood adopted a "Title IX Sexual Harassment Policy" (the "Policy") attached hereto as Exhibit A. This 26-page Policy includes many of the complaint resolution procedures set forth in the Title IX guidance, including the right of the accused: (1) to be notified regarding investigation procedures including formal and informal resolution procedures; (2) to have a hearing; (3) to have a support person present at the hearing; (4) to have the right to present witnesses and written evidence; (5) to have equal access to review and comment upon any information independently developed by the Investigator; (6) to have the right to a written notice of the determination of the complaint; and (7) to have the right of appeal.

20. At some point in September, 2015, an unknown party apparently contacted the Dean of Students and alleged that Doe had engaged in non-consensual sex with a female student. Further details are unknown because Lindenwood has refused, even after a request of counsel, to produce any information regarding the nature or details of the complaint. Section 5.A of the school's Policy requires that, upon receipt of a complaint, the school must inform the accused that a complaint has been filed. At that time, under the Policy, "[t]he accused is informed of all rights under the sexual offense policy and is invited to submit a written response to the administrator within 72 hours." *Id.* It is difficult to see how an accused can submit a written response to the complaint when he is not provided access to the complaint.

21. By receiving a complaint in September 2015, and commencing an investigation and keeping it secret from Doe, Lindenwood committed its first known violation of the Policy and Title IX.

22. Also in September 2015, Doe was contacted by a member of the Belleville Police Department, who requested to interview him. Doe voluntarily met with the officer, who informed him he was investigating a claim that Doe had engaged in non-consensual sex with a female student. The officer identified the female student. Doe acknowledged being intimate with the student but informed the officer that their relations were entirely consensual. The officer continued his investigation and on September 18, 2015, notified Doe that the investigation was concluded and the district attorney would not be pursuing any criminal charges.

23. Apparently, the Dean of Students was continuing her investigation during this time, in secret, and with no notice to Doe, in continuing violation of the Policy and Title IX.

24. On October 14, 2015, Tom Coppotelli, the school's Director of Public Safety and Security, contacted Doe and asked him to come in for an appointment. Doe met with Coppotelli and another security official the next day. They indicated they wanted to interview Doe about the same matter the Belleville police had investigated. They also brought up a second female student, with whom Doe had been involved ten months earlier. They suggested that this other student also might have believed her involvement with Doe was non-consensual. Any actual information about a complaint from this second student, if there was one, also has been withheld from Doe, in violation of the Policy and Title IX. Doe answered the security officers' questions and made clear his relations with both students were consensual. He identified two witnesses, a male student and a female student, who could confirm that fact.

25. Thereafter the security officers concluded their interview. Doe learned later that they contacted and spoke to the female student witness that Doe had identified, but they did not speak to the male witness. They left a message for the male witness, but did not indicate any urgency to respond.

CORE/./110976662.2

26. The next day, a Friday, at approximately 3:00 p.m., one of the security officers called Doe and told him he needed to come to the Dean of Students' office right away. He did not tell Doe the purpose of the meeting, just that it was urgent.

27. Doe arrived promptly and waited outside the Dean of Students' office for twenty minutes. He was then brought into the office, where he met the Dean, the Housing Director and the two Security guards. Doe was alone, with no representative there on his behalf.

28. The Dean then informed Doe that he was being dismissed from the University. The Dean referred to the two female students, but was not willing to listen to anything Doe had to say. The Dean instructed Doe to sign two documents: a "Behavior Incident Report" and an "Add/Drop/Withdraw Form" (attached as Exhibits B and C). When Doe asked what would happen if he did not sign them, the Dean threatened criminal charges. Doe signed both documents under duress.

29. The Behavior Incident Report provided virtually no information about the reasons for the dismissal, stating only "Title IX Violation; Student Conduct Violation."

30. The Dean then gave Doe the first page of the school's twenty-six page Policy that had been highlighted in orange to emphasize the portion that referred to expulsion as a remedy for violations of the Policy (attached as Exhibit D). The Dean did not give Doe the entire policy that set forth his rights, nor did the Dean allow him time to read the entire Policy or seek representation. Doe was not allowed to call his parents. Finally, the Dean arranged for Doe to be driven in a golf cart across the middle of campus, in front of scores of other students, in the company of security guards, and gave him two hours to collect all of his possessions and leave campus. The Dean gave Doe a one page letter that threatened to prosecute him for trespassing if he ever returned to campus (attached as Exhibit E).

31. The security guards took Doe to get his things. Doe called his family, and his father then drove 1,200 miles round-trip to collect Doe and his possessions. Since October 16, Doe has missed all of his classes and his significant extra-curricular activities, including a number of games and practices for the school team upon which Doe was a leading scorer. He has received many supportive messages and calls from students on campus, including specific unsolicited messages from at least one female student who confirmed that she had heard directly from one of the alleged complainants that her involvement with Doe was in fact consensual.

32. Lindenwood dismissed Doe from the school without notifying him of the complaints against him, in violation of the Policy and Title IX. Doe still does not know if complaints were made by the female students involved, or by third parties.

33. Lindenwood dismissed Doe from the school without informing him of all his rights under the sexual offense policy, in violation of the Policy and Title IX.

34. Lindenwood dismissed Doe from the school without inviting him to submit a written response to the administrator within 72 hours, in violation of the Policy and Title IX.

35. Lindenwood dismissed Doe from the school without notifying him of the investigation procedures, including formal and informal resolution procedures, in violation of the Policy and Title IX.

36. Lindenwood dismissed Doe from the school without conducting any form of a hearing, in violation of the Policy and Title IX.

37. Lindenwood dismissed Doe from the school without allowing him to have a support person present at a hearing, in violation of the Policy and Title IX.

38. Lindenwood dismissed Doe from the school without allowing him to testify, present witnesses and submit evidence, in violation of the Policy and Title IX.

CORE/./110976662.2

39. Lindenwood dismissed Doe from the school without allowing him to have equal access to review and comment upon any information independently developed by the Investigator, in violation of the Policy and Title IX.

40. Lindenwood dismissed Doe from the school without providing him a written notice of the determination of the complaint, in violation of the Policy and Title IX.

41. Lindenwood dismissed Doe from the school without making any factual findings by a preponderance of the evidence, in violation of the Policy and Title IX.

42. Lindenwood dismissed Doe from the school without advising him of his immediate appeal rights, nor did the Dean explain that the Policy typically provided that any discipline would be suspended pending resolution of the appeal, in violation of the Policy and Title IX.

43. Lindenwood, in threatening Doe with criminal charges if he did not sign the Behavior Incident Report and Add/Drop/Withdraw Form, engaged in extortion, duress and conduct entirely unbecoming of university officials, acting under color of official action, in a clear position of authority, with respect to a 22 year old student. This conduct was devoid of any form of fair and equitable investigative procedures, and unquestionably and dramatically deviated from the school's stated values of "the worth and integrity of the individual" and "the primacy of truth."

## COUNT I
## VIOLATION OF TITLE IX

44. Doe restates and realleges all the paragraphs above as if fully stated herein.

45. Title IX and its implementing rules and guidance mandate how Lindenwood must conduct investigations of alleged sexual harassment or sexual assault among students.

CORE/./110976662.2

46. Lindenwood must meet the minimum procedural elements set forth in the guidance to comply with Title IX.

47. Lindenwood must adopt a written Title IX Sexual Harassment Policy to comply with Title IX.

48. Upon adopting a Title IX Sexual Harassment Policy, Lindenwood must follow its policy to comply with Title IX.

49. Lindenwood did in fact adopt a 26 page Title IX Sexual Harassment Policy, which the school understood it must apply with respect to its investigation of Doe, as evidenced by the fact that the Dean of Students gave Doe a highlighted first page of the Policy at the time she dismissed Doe from the school.

50. Despite being aware of the Policy and being charged with implementing the Policy, the Dean of Students utterly disregarded all aspects of the Policy in determining to dismiss Doe.

51. By violating Title IX, the implementing rules and Lindenwood's own Policy in dismissing Doe, Lindenwood has knowingly and intentionally violated Title IX.

52. Title IX prohibits dismissing a student arbitrarily and capriciously, and that is what Lindenwood has done to Doe.

53. Title IX prohibits a school from acting with deliberate indifference to an accused student's rights under Title IX, the implementing rules and guidance, and a school's own policy.

54. The school violated Title IX by conducting its investigation with gender bias, as the investigating officers interviewed female witnesses but not male witnesses.

55. Title IX is enforceable through an implied private right of action for monetary damages as well as injunctive relief.

CORE/./110976662.2

56. Doe is entitled to injunctive relief, including but not limited to a mandatory injunction from this Court ordering Lindenwood to immediately vacate its dismissal of Doe, and restore all his rights and privileges as a student on campus.

57. Doe is entitled to a judgment against Lindenwood for his damages directly caused by Lindenwood's unlawful conduct, including but not limited to his transportation expenses incurred in leaving campus on two hours' notice, his costs to return to campus, reasonable costs of tutoring and other assistance to allow him to catch up in schooling and salvage the semester, reputational damages, as well as his attorney's fees and costs incurred in enforcing his rights in this action.

58. The Court should award Doe all the foregoing relief and such other relief as the Court deems appropriate and just.

## COUNT II
## BREACH OF CONTRACT

59. Doe restates and realleges all the paragraphs above as if fully stated herein.

53. Lindenwood and Doe entered into an implied contract upon Doe's enrollment in the school. Among other things, Doe agreed to pay tuition and fees to Lindenwood, and the school agreed to conduct and operate the school pursuant to the school's adopted and published policies, including the school's Title IX Sexual Harassment Policy.

54. Lindenwood breached its contract with Doe by failing to abide by the Policy, and by utterly disregarding the Policy in dismissing Doe.

55. Doe has been harmed by the school's breach, as he has been prevented from pursuing his education, is losing the value of his investment in tuition, fees, room and board and his substantial personal time invested in his studies and his athletic pursuits. In addition he has suffered serious and undue damage to his reputation, and the school has imposed upon him a

11

black mark on his academic record that, if not removed, will burden him indefinitely as he pursues additional educational and vocational opportunities.

56. Doe is entitled to injunctive relief and damages to remedy the school's breach of contract.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

57. Doe restates and realleges all the paragraphs above as if fully stated herein.

58. In every contract or agreement there is an implied duty of good faith and fair dealing requiring each party impliedly to not do anything to destroy or injure the rights of the other party under the contract, to evade the spirit of the transaction, or to deny the other party the expected benefits of the contract. Put another way, it is the duty of one party to cooperate with the other to enable performance and achievement of the expected benefits of the contract.

59. Lindenwood's wholesale disregard for its own Title IX Sexual Harassment Policy in dismissing Doe intentionally and willfully deprived Doe of his reasonable expectation of rights under his implied contract with Lindenwood.

60. Lindenwood's threat of criminal charges if Doe did not sign the Behavior Incident Report or the Add/Drop/Withdraw form was an unlawful and improper action intended to deprive Doe of his rights under the contract – in particular all of his rights under the Policy – as the Dean of Students apparently believed she could recast Doe's dismissal as somehow a "voluntary" withdrawal from the school.

61. Lindenwood's conduct breached the implied covenant of good faith and fair dealing, and Doe is entitled to injunctive relief and monetary damages to remedy this breach.

## COUNT IV
## DEFAMATION

62. Doe restates and realleges all the paragraphs above as if fully stated herein.

63. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.

64. A statement is defamatory per se if it alleges a criminal offense.

65. A statement is defamatory per se where, in relevant part, it either suggests that a person is unable to perform their job, lacks sufficient integrity to perform their job, or prejudices a person in their profession or trade.

66. Lindenwood made a statement, in the Behavior Incident Report, that Doe had committed a "Title IX violation" and a "Student Conduct Violation." Lindenwood has published that statement to third parties, including the two female students who were alleged to be engaged in non-consensual sexual relations with Doe. In addition, on information and belief, Lindenwood made verbal statements to third parties indicating that Doe had committed a sexual assault on these two female students. Since his dismissal, Doe has heard from numerous students who are not only aware of his dismissal, but that the dismissal resulted from a school determination that Doe had committed a sexual assault on these two women.

67. Lindenwood also published these false and defamatory statements to other college staff who were not directly involved in the investigation, including but not limited to the Housing Director.

68. Additionally, Lindenwood published an "Alert" to students, faculty and staff, that was reported in the Belleville News-Democrat newspaper, and Lindenwood staff were quoted in

13

the article providing details of their investigation. This information, coupled with the dismissal of Doe, made Doe identifiable as one of the alleged perpetrators referenced in the news article.

69. Lindenwood's assertion of facts – that Doe committed a Title IX violation, that Doe committed a Student Conduct Violation, and that Doe committed sexual assault on the two women – are all false.

70. Lindenwood acted with reckless disregard as to whether its assertions of fact were true or false.

71. Doe's reputation and standing in the university community have been damaged by Lindenwood's false statements, and Doe is entitled to general damages, special damages, mental anguish and humiliation damages, and punitive damages where, as here, Lindenwood acted with deliberate indifference and malice toward Doe – pre-judging him and assuming him to be guilty without following any of the procedures the school itself mandated for determining the truth in an investigation of alleged sexual assault.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. Doe restates and realleges all the paragraphs above as if fully stated herein.

73. It is unlawful to engage in extreme and outrageous conduct that results in severe emotional distress to another.

74. Lindenwood engaged in extreme and outrageous conduct against Doe by: (1) finding him guilty of sexual assault through a process by which Lindenwood utterly ignored its own policies and procedures for conducting a fair and equitable investigation and (2) threatening Doe with criminal prosecution if he did not agree to "voluntarily" withdraw from the university.

75. Lindenwood's extreme and outrageous conduct has caused severe emotional distress to Doe, as he has been wrongfully found guilty of a crime he did not commit, has

suffered extreme embarrassment in front of friends and family as a result of the false accusation and dismissal, and has had to endure emotional anguish of seeing his parents and family distraught over his wrongful dismissal and the false conclusions of the school.

76. Doe is entitled to the recovery of damages against the school as a remedy for its tortious conduct.

**WHEREFORE**, Doe prays that judgment be entered declaring:

1. That Lindenwood's purported dismissal of Doe was invalid, unlawful, arbitrary, capricious, contrary to the requirements of Title IX and in breach of the contract between Doe and the school, such that Lindenwood should be affirmatively enjoined to vacate the dismissal and restore to Doe all of his rights and privileges as a student at the school;

2. That Lindenwood be ordered to immediately produce to Doe all of the investigative data, statements, video or audiotapes and other evidence and information it has gathered in its purported investigation of Doe, so that he may confront and respond to the claimed evidence against him;

3. That judgment be entered in favor of Doe and against Lindenwood for all of Doe's damages, including reputational damages, in an amount to be determined at trial;

4. That Lindenwood be ordered to reimburse Doe for his reasonable attorney fees and costs of suit incurred in bringing this action and restoring his student status and reputation; and;

5. That Doe have such other and further relief as the Court deems just.

Dated: October 26, 2015

                                              Respectfully submitted,

                                              **STINSON LEONARD STREET LLP**

                                              By: */s/ Jamie L. Boyer*
                                                   Jamie L. Boyer IL # 6281611
                                                   Keith S. Moheban, *pro hac vice pending*
                                                   7700 Forsyth Blvd., Suite 1100
                                                   St. Louis, MO 63105
                                                   (314) 863-0800 (telephone)
                                                   (314) 863-9388 (facsimile)
                                                   jamie.boyer@stinson.com
                                                   keith.moheban@stinson.com
                                                 *Attorneys for Plaintiff*